487 A.2d 817

**Thomas J. JUDGE, Sr., as Director of the Medical Professional Liability Catastrophe Loss Fund of the Commonwealth of Pennsylvania, Appellant,**

**v.**

**ALLENTOWN AND SACRED HEART HOSPITAL CENTER, and The Hartford Insurance Group, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1984.

Decided Feb. 13, 1985.

Harvey Bartle, III, Philadelphia, for appellant.

Frank A. Baker, III, Allentown, for Allentown & Sacred Heart Hos. Center.

Robert H. Holland, Barbara L. Hollenbach, Bethlehem, for Hartford Insur. Group.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

Appellant Thomas J. Judge, Sr., director of the Medical Professional Catastrophe Loss Fund ("Fund")[1] initiated an action in assumpsit in Commonwealth Court against Appellees Allentown and Sacred Heart Hospital Center ("Hospital Center") and the Hartford Insurance Group ("Hartford"). This is a direct appeal from the Commonwealth Court's order sustaining Appellees' preliminary objections in the nature of a demurrer and dismissing Appellant's amended complaint. 78 Pa.Cmwlth. 373, 467 A.2d 899. We now reverse.

The amended complaint sets forth the following allegations. On March 4, 1977, an operation to correct a facial spasm was performed on Eugene Issermoyer at the Hospital Center. Issermoyer failed to recover as anticipated from a general anesthesia which had been administered, and is now paralyzed in both legs and his left arm. In 1978, a complaint was brought in Lehigh County, Pennsylvania before the Arbitration Panels for Health Care by Issermoyer and his wife for injuries sustained as a result of the operation. The Hospital Center and two of its staff physicians, the anesthesiologist and neurosurgeon involved in the operation, were among those named as defendants. After extensive discovery and negotiations, the action was settled for $1,503,935 on behalf of the Fund and the staff physicians. Each of the physicians contributed $100,000 to the settlement by their basic coverage insurance carrier, the Argonaut Insurance Company. The Fund provided the

1. The Fund is an executive agency of the Commonwealth, which was established pursuant to Article VII of the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, No. 111, as amended, 40 P.S. §§ 1301.701–1301.1006.

difference.[2] Although the Issermoyers executed releases in favor of all defendants as part of the settlement, the Hospital Center and its insurance carrier, Hartford, opposed, and failed to contribute to, the settlement.

The first count of the complaint alleges that the Hospital Center was negligent, inter. alia, in failing to properly supervise its physicians and in failing to diagnose relevant factors in the patient's condition, and that its conduct was a substantial contributing factor to Issermoyer's paralysis. It is asserted that the Fund was secondarily liable to Issermoyer and that it acquired the defendant physicians' right of contribution as joint tortfeasors against the Hospital Center and Hartford through indemnity and equitable subrogation. It is further alleged that the Hospital Center and Hartford failed to make a good faith investigation and determination of the Hospital Center's exposure to liability, and of the resulting exposure of the Fund to excess liability. The Appellee's preliminary objections asserted that the complaint failed to state a claim upon which relief could be granted, because the Fund lacked statutory authority to pursue the claim. This reasoning was adopted by the Commonwealth Court.

The scope of review of a challenge to the sustaining of a preliminary objection in the nature of a demurrer is limited. As we stated in *Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 244, 465 A.2d 1231, 1232–33 (1983):

> [a]ll material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted for [the purpose of this review]. *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970). Where a doubt exists as to

**2.** As the statutory excess liability carrier, the Fund satisfies all awards, judgments and settlements for damages against eligible health care providers resulting from professional liability claims to the extent that a provider's share exceeds his basic coverage insurance in effect at the time of the occurrence. 40 P.S. § 1301.701(d).

whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Birl v. Philadelphia Electric Co.*, 402 Pa. 297, 167 A.2d 472 (1960).

The Commonwealth Court concluded that the Health Care Services Malpractice Act did not expressly or impliedly confer upon the Fund a right of action against a basic insurance coverage carrier and its insured for refusing to approve and contribute to a settlement. The Appellees argue that the Commonwealth Court did not err in so holding because an agency may only exercise those powers which have been conferred upon it by the Legislature. In *Green v. Milk Control Commission*, 340 Pa. 1, 3, 16 A.2d 9 (1940), cert. denied, 312 U.S. 708, 61 S.Ct. 826, 85 L.Ed. 1140 (1941), we held that

> [t]he power and authority to be exercised by administrative [agencies] must be conferred by legislative language clear and unmistakable. A doubtful power does not exist. Such tribunals are extra judicial. They should act within the strict and exact limits defined.

It thus appears that Appellees' statement is correct as a general proposition of law. A review of the cases upon which the Appellees and the lower court rely demonstrates, however, that this proposition is inapplicable to the instant case.

In *Pennsylvania Human Relations Commission v. Transit Casualty Insurance Co.*, 478 Pa. 430, 387 A.2d 58 (1978), the issue was whether the Human Relations Commission had the authority to order a respondent, who was not the employer of the complainant, to compensate the claimant where the respondent has engaged in a discriminatory employment practice. We held that the Legislature had expressly given the Commission authority to take such affirmative action. In *Demarco v. Comm., Department of Health*, 40 Pa.Cmwlth. 248, 397 A.2d 61 (1979), the Commonwealth Court held that the Secretary of Health lacked the authority to issue orders requiring individuals to desist from violating the Controlled Substance, Drug, Device and

Cosmetic Act. The Secretary of Health had asserted that the general description of his duties to protect the health of the citizens of Pennsylvania, which was contained in the Act, authorized him to enter the orders. The Commonwealth Court concluded that the general description did not necessarily imply the independent power to command individuals to desist; rather, the Legislature restricted his authority to that of seeking injunctive relief in the courts.

The rationale behind these cases restricting the powers of an administrative agency is to insure that the agency does not exceed the limitations which have been established by the Legislature for the agency's exercise of its *own* authority. The same reasoning does not support a limitation on the ability of an agency to enforce its rights or seek a remedy in a judicial forum. In the latter situation, an administrative agency does not attempt to independently exercise a power which is beyond that granted by the Legislature. Rather, it tries to act in furtherance of the powers and duties specifically established by law.

It would be anomalous for this Court to conclude that the legislative authority vested in the director "... to defend, litigate, settle or compromise any claim payable by the fund," 40 P.S. § 1301.702(f), would permit such extensive involvement in court in a medical malpractice claim, but not permit the director to pursue an action in the courts to protect the integrity of the fund where it is alleged that a basic insurance coverage carrier has wrongfully refused to approve or contribute to a settlement.[3] We find that the

3. Because the Act does not expressly grant authority to the Fund to maintain the action, the Commonwealth Court erroneously held that no such authority existed. In arriving at its conclusion, the Court focused upon two sections of the Act, § 605 [the Fund has right to full indemnity, including defense costs, where claim for recovery made after four years due to willful concealment by health care provider or insurer] and § 702(c) [basic coverage insurance carrier's failure to notify the director of any case where it is reasonably believed the claim's value exceeds its coverage shall make it responsible for payment of the award or verdict where the fund is prejudiced by such failure]. The Court interpreted this as indicative of a legislative intent to preclude the fund from maintaining any other type of action. The Court's result, however, was predetermined by its initial premise that

Commonwealth Court erred in holding that the Appellant's complaint failed to state a cause of action.

The case is remanded for proceedings consistent with this Opinion.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that this case is remanded for proceedings consistent with this Opinion.

the rule of law limiting an administrative agency's authority to that clearly conferred by the Legislature was applicable to this action. As we have demonstrated above, this premise was incorrect.