Quaker City Chocolate and Confectionery Company, Appellant, v. Delhi-Warnock Building Association et al.

Argued May 27, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Earl Jay Gratz,* for appellant.

*C. Brewster Rhoads,* with him *Theodore E. Nichterlein, Henry Arronson* and *George G. Chandler,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, June 30, 1947:

In this action of assumpsit plaintiff's statement of claim is patently defective in form. The court below

deemed it also deficient in substance, sustained an affidavit of defense raising questions of law, and entered judgment in favor of defendants.

The statement avers that in certain prior proceedings there were "finally and conclusively determined and adjudicated" the following facts: That in the period between August 1, 1924 and March 1, 1929 plaintiff loaned sums of money aggregating $25,000 to Warnock Building Association and received in return the Association's notes payable to plaintiff (the terms of the notes are not set forth). That on or about March 1, 1929 plaintiff delivered these notes to Warnock and received from it certificates of its full-paid stock as collateral security for payments of the loans, "this having been intended as a temporary arrangement" (the terms of the arrangement are not set forth). That by various payments the loans were so reduced that the balance owing to plaintiff on or about March 1, 1931 was $14,400, payment of which was collaterally secured by 72 full-paid shares of Warnock. That in 1932 Warnock was about to merge with Delhi Building Association, whereupon plaintiff filed a bill in equity against Warnock to recover $14,400 *alleged to be the value of the 72 shares,* and on August 8, 1932 obtained judgment against Warnock in the amount of $9,103.68, (which Warnock had admitted to be the value of the shares) without prejudice to plaintiff's right to proceed for recovery of the remainder of its claim. That the merger between the two Associations was effected, the consolidated corporation being named Delhi-Warnock Building Association. That in November or December of 1936 an arrangement was entered into whereby plaintiff received $695.42 on account of the loans, "that is, in partial payment of said judgment," surrendered the 72 shares to Delhi-Warnock, and received in lieu thereof 66½ full-paid shares of that Association. That on June 10, 1937 Delhi-Warnock, under the threat of execution being issued on the judgment, paid plaintiff $50 on account of the judgment and loans.

That on August 7, 1937 plaintiff revived the judgment by sci. fa. proceedings and on July 24, 1940 issued an attachment execution thereon. That on July 29, 1940 the liquidating trustees of Delhi-Warnock (which had commenced voluntary liquidation in October, 1937), filed a bill in equity to have the judgment marked to their use. That on August 13, 1940 they entered a rule to open the revived judgment and on February 18, 1941 a rule to set aside the lien thereof. That by orders and decrees of June 17, 1942 the court discharged defendants' rules, made absolute a rule of plaintiff for judgment against the garnishee in the attachment execution proceedings, and dismissed defendants' bill in equity, and these orders and decrees were affirmed on appeal (*Quaker City Chocolate and Confectionery Co. v. Warnock Building Association*, 347 Pa. 186, 32 A. 2d 5). The statement of claim then proceeds to aver that on or about December 7, 1943 defendants completed payment of the judgment of $9,103.68, that plaintiff's loans were, as of May 1, 1932, in the principal amount of $14,400, and that, after credit for payment of the judgment, the balance due by defendants, "the liability of defendants for which has been finally and conclusively determined and adjudicated in said prior proceedings", is $5,296.32, with interest thereon from May 1, 1932. The present action is brought to recover that amount.

Disregarding for the moment the *form* of the statement of claim, which, instead of categorical averments of the making of the alleged loans, the terms thereof, and the subsequent modifications and arrangements between the parties in regard thereto, merely states that the "following facts and matters . . . were in issue and were finally and conclusively determined and adjudicated," it is clear from an examination of the "prior proceedings" relied upon by plaintiff and incorporated by reference thereto in the statement of claim, that, as was rightly held by the court below, there has *not* been any determination or adjudication of the facts upon which plain-

tiff's present claim depends. The only action heretofore instituted by plaintiff was its bill in equity filed in 1932, but that proceeding was brought by it, not as a *creditor* of Warnock, but as an *"owner"* of 72 shares of Warnock stock expressing disapproval of the proposed merger with Delhi and, as a dissenting shareholder, demanding, in accordance with familiar principles of corporation law, that it be paid the value of its shares. Nothing was there claimed or involved in regard to any debt due from Warnock to plaintiff by reason of loans, nor was there any allegation that the 72 shares were held by plaintiff as collateral for any loans. The judgment of $9,103.68 was entered because Warnock admitted that that was the value of the shares, and plaintiff was granted the right to proceed for the remainder of its claim for the greater value of the shares which it asserted in its bill in equity.[1] All that this proceeding involved, therefore, was, in effect, a forced purchase or redemption of these shares by Warnock, since the law did not compel plaintiff to become a shareholder in the consolidated Association. Until the judgment of $9,-103.68 for the value of the shares was paid plaintiff had the right to retain the stock; upon such payment being made it would be obliged, of course, to surrender it.

Coming now to the bill in equity filed by the liquidating trustees and the rules taken by them to escape the judgment, the sole ground upon which they sought relief was a contention on their part that the 66½ shares of Delhi-Warnock were taken by plaintiff in full satisfaction and payment of the judgment; on the other hand it was plaintiff's contention—and the court so held— that its surrender of the 72 shares and its acceptance of the 66½ shares were not in any way to affect the judgment, but that plaintiff was to hold the 66½ shares merely in lieu of the 72 shares as security for its payment. None of these subsequent proceedings, therefore,

---

[1] Plaintiff has never pressed, and presumably has abandoned, its claim for such alleged greater value.

had any range or scope beyond the determination of the effect of this exchange of stock on defendants' liability *on the judgment;* they were not concerned with any ulterior relationship between the parties of debtor and creditor.[2] It is, then, abundantly clear that notwithstanding any extraneous findings of fact, irrelevant to the sole issue involved, which may have been inadvertently made by the court in the course of this litigation, plaintiff's claim for an alleged unpaid balance of loans has never been considered, much less adjudicated, in any of the proceedings relied upon by plaintiff as constituting a judicial determination of its present demand.

With the conclusion thus reached plaintiff's statement of claim, as it is now drawn, fails entirely. Plaintiff asserts, however, that the court should not have entered a summary judgment against it, but should have allowed it to amend the statement in accordance with the established rule that where there appears a possibility of recovery under a better statement of the facts an opportunity to file an amended statement of claim must be granted: *Winters v. Pennsylvania R. R. Co.,* 304 Pa. 243, 155 A. 486; *Garnack v. McNally,* 315 Pa. 30, 172 A. 102; *Seitz, Trustee, v. Fulton National Bank,* 325 Pa. 14, 188 A. 569; *United Societies of Greek Catholic Religion of U. S. of America v. Klochak,* 340 Pa. 159, 16 A. 2d 373; *Adler, Administrator, v. Helsel,* 344 Pa. 386, 25 A. 2d 714. Plaintiff's position in this regard is not without merit, for, even though it has not succeeded in its attempt to establish its claim as an adjudicated one and thus avoid the necessity of proving it de novo, it may be able to set forth in more direct fashion in an amended statement the claim which it is now apparently attempting to assert, namely, that it made loans to Warnock, that it received Warnock's notes, that it sur-

---

[2] It may incidentally be noted that, since the court adopted plaintiff's version that 66½ shares were received by it as security for the payment of the judgment, plaintiff lost its rights and interest in those shares when the judgment was ultimately paid.

rendered the notes under an arrangement by which it accepted stock of Warnock not in satisfaction of the loans but as collateral for their payment, and that there still remains due on those loans an unpaid balance of $5,-296.32. Defendants suggest that the allowance of such an amendment would be but a futile gesture in that a claim on loans allegedly made in the period from 1924 to 1929 would obviously be barred by the statute of limitations. It is true that the only payments made to plaintiff within the statutory period were those of $50 on June 10, 1937, and the balance remaining due on the judgment of $9,103.68 on December 7, 1943, and, since those payments were made on account of the judgment obtained by plaintiff as a dissenting stockholder for the value of its stock in Warnock, they cannot serve plaintiff to toll the statute of limitations, for while, ordinarily, a payment on account of a debt is regarded as an acknowledgement of liability and of willingness to pay the balance due thereon and therefore is held to interrupt the operation of the statute, in order to have that effect the payment must be the voluntary act of the debtor and not one made in invitum, as, for example, in satisfaction of an execution on a judgment; under such circumstances the debtor is merely submitting to the creditor's exercise of an enforceable legal right: see *Barnes v. Pickett Hardware Co., Ltd.*, 203 Pa. 570, 572, 53 A. 378, 379. Moreover, these payments in satisfaction of plaintiff's judgment were made by defendants solely in recognition of their liability on that judgment, not in acknowledgment of any other indebtedness; the judgment was only for the purchase or redemption price of the stock of a dissenting shareholder irrespective of whether that stock was owned absolutely or held as collateral; the payments were those which the law compels every corporation to make and which were obligatory upon defendants whether or not there was anything due to plaintiff on unpaid loans. Therefore the payment of the judgment was not an admission of any other or greater

debt being due and consequently had no effect on the statute of limitations: 34 Am. Jur. 265, §338. However, if a defendant chooses to raise the bar of the statute it must be pleaded; it is not a defense absolute of which the court will take judicial notice on the allegations of the plaintiff's statement of claim, and therefore it cannot be taken advantage of by demurrer: *Barclay v. Barclay*, 206 Pa. 307, 55 A. 985; *Swaney v. Georges Township Road District*, 309 Pa. 385, 387 (cases cited in note), 164 A. 336, 337; *Birdsall v. Wilbur*, 329 Pa. 69, 196 A. 862. If plaintiff, by proof of any facts, circumstances or transactions not appearing in the present record, can bring its claim within the statutory period, it should be given an opportunity to do so in pursuance of an amended statement of claim.

The order entering judgment is reversed, and the record is remitted with direction to permit plaintiff to amend its statement of claim within a limit of time to be prescribed by the court.